## Equitable Gas Company v. Smith et al.

*Kyle & Reinhart,* for plaintiff; *James J. Purman,* for defendants.

SAYERS, P. J.—From the petition and admissions contained in the answers thereto, we find the following facts:

1. Imri T. Smith, one of the defendants in this case, purchased and took title to a tract of land, situate in Greene Township, Greene County, Pennsylvania, containing 176.892 acres, from one Oran Grove and wife by deed dated April 1, 1913, and recorded in the recorder's office of Greene County, Pennsylvania, on May 17, 1913, in deed book vol. 231, page 136.

2. Imri T. Smith and Cinderella, his wife, conveyed the said tract of land to his two sons, Leslie C. Smith and Floyd Leo Smith, by deed of general warranty, dated Feb. 5, 1920, and recorded in the recorder's office of Greene County on Feb. 9, 1920, in deed book vol. 272, page 320.

3. Leslie C. Smith and Grace E. Smith, his wife, by deed of general warranty, dated Feb. 9, 1920, and recorded the same day in the recorder's office in Greene County, Pennsylvania, in deed book vol. 272, page 322, conveyed all their interest in the said tract of land to Floyd Leo Smith.

4. The deed from Imri T. Smith and wife to Leslie C. Smith and Floyd Leo Smith contains this exception or reservation:

There is also excepted from this conveyance and sale, to Imri T. Smith, during the life of said Imri T. Smith, all the oil and gas and other minerals, the rentals and royalties that may be obtained from the leasing or operating said land with the exclusive right in said Imri T. Smith to lease said land for oil, gas and other mineral purposes on such terms and conditions as in his judgment is for best interest of all parties concerned.

A like exception or reservation in the same words is contained in the deed from Leslie C. Smith and wife to Floyd Leo Smith.

5. Imri T. Smith, at that time a widower, leased the said land to W. P. Ely for oil and gas purposes by lease or agreement dated June 7, 1923, and recorded June 27, 1923, in deed book vol. 306, at page 545, and the said lease was transferred by W. P. Ely to the Equitable Gas Company, the plaintiff and petitioner in this proceeding, by a writing dated June 19, 1923, whereby all the right, title and interest of the lessee in the aforesaid oil and gas lease was sold, assigned and transferred to the Equitable Gas Company, petitioner.

6. By said lease, the lessor did:

Grant, demise and let unto the lessee all the oil and gas in and under the following described tract of land, and also the said tract of land for the purpose and with exclusive right of drilling and operating thereon for said oil and gas, together with the right-of-way, and the right to lay pipes to convey water, oil, steam and gas, and to have sufficient water and gas from the premises to drill and operate wells thereon, also such other privileges as are necessary for conducting said operations, and the right to remove at any time all property placed thereon by the lessee. . . . But no wells are to be drilled within 250 feet of the dwelling house or barn now on the premises without the lessor's consent.

To have and to hold the same unto the lessee for the term of five years from the date hereof and as much longer as the said premises are being operated for the production of oil or gas, or as oil or gas is found in paying quantities thereon, yielding and paying to the lessor the one-eighth part or share of all the oil saved from that produced on the premises, delivered free of expense into tank or pipe line to the lessor's credit; and should any well produce gas in sufficient quantities to justify marketing the same in the pipe line, the lessor shall be paid at the rate of One hundred ($100.00) dollars quarterly for such well, so long as the gas therefrom is conveyed and sold off the premises, the first payment to mature ten days after well is completed, and every three months thereafter. . . .

Provided, however, that this lease shall become null and void and all the rights thereunder shall cease and determine unless one well shall be completed on the said premises within ten days from the date hereof, or unless the lessee shall pay at rate of Eighty-eight ($88.00) dollars in advance for each additional three months such completion is delayed from the time above mentioned for the completion of said well until one well is completed.

The lease further provided that all payments should be made to Imri T. Smith at Davistown, Pa., and contained a provision for the use of gas for light and heat in the mansion house on said premises free of cost to the lessor and extended the provisions of the lease to the heirs, executors, successors and assigns of the respective parties.

7. The Equitable Gas Company, a corporation of Pennsylvania, having its principal office at Pittsburgh, Pa., was engaged in the drilling, operating and development of lands for oil and gas purposes, whereby it obtained its supply of gas for distribution to its customers, and some time in September of 1927 it entered upon the lands described in the aforesaid lease and made a location for a well to be drilled on said land and contracted for the erection of a rig

618

for the drilling of said well and delivered certain equipment therefor on the leased premises in preparation for the commencement of operations under the lease.

8. On September 29, 1927, Floyd Leo Smith served a written notice upon the Equitable Gas Company, a copy of which is as follows:

Waynesburg, Pa., Sept. 29, 1927.

To Philadelphia Company and Equitable Gas Company:

Sirs: Having this day learned that you have made a location for and are about to drill an oil or gas well upon a tract of land situate in Greene township, Greene county, Pennsylvania, containing one hundred seventy-six acres, more or less, which land was leased by Imri T. Smith to W. P. Ely by lease dated June 7, 1923, recorded in deed book vol. 306, page 545, and by said W. P. Ely assigned to you.

These are therefore to notify you that at the time said lease was made Imri T. Smith was not and that he has not been since owner of said land or any part thereof. That I am sole owner of said land and my title thereto is of record in deed book vol. 272, pages 320 and 322. That the only right, title or interest of Imri T. Smith in and to the oil and gas in and under said land is during the life of said Imri T. Smith, which right is reserved in deed dated February 5, 1920, recorded in deed book vol. 272, page 320.

You are further notified that I protest your operating said land under said lease and that upon the death of Imri T. Smith I will assert my rights as against you.

Hereof fail not.                                               FLOYD LEO SMITH.

9. After receiving said notice, the petitioner plaintiff ceased to pursue its drilling operations on said lease any further, and no oil or gas well has been completed on the tract of land; but the stipulated delay rental of $88 in advance for each additional three months after the first ten days of said lease has been regularly paid by the lessee and its assignee to the present time, and the aforesaid lease, which would have expired by its terms, has been extended by an agreement in writing between the lessor and the present holder of the lease, the petitioner plaintiff.

10. The plaintiff petitioner filed a petition under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, requesting the court to construe the deed, lease and the assignment of lease, copies of which were attached to the petition, and to determine the extent of the title and right of the petitioner to operate for oil and gas under the said tract of land, it being claimed by Floyd Leo Smith, one of the defendants in said action, that Imri T. Smith, the lessor in said lease, could only grant, demise and lease to the lessee the land for the term and period of the natural life of the said Imri T. Smith, and that thereafter the said oil and gas that may then remain in and under said tract of land would become vested in the said Floyd Leo Smith, and could not thereafter be in any manner affected by any oil or gas lease placed thereon by the said Imri T. Smith.

11. The petition prays for a judgment or decree of the court, declaring:

First. That the deed dated Feb. 5, 1920, from Imri T. Smith and Cinderella Smith, his wife, to Floyd Leo Smith and Leslie C. Smith, recorded in deed book vol. 272, at page 320, in the office for the recording of deeds of Greene County, Pennsylvania, and herein set forth as Exhibit "A," is and shall be construed as excepting and reserving to said Imri T. Smith, during the life of said Imri T. Smith, all the oil and gas and other minerals, the rentals and royalties that may be obtained from the leasing or operating said land; and excepting and reserving unto said Imri T. Smith the right, exclusive in him during his lifetime, to lease said land for oil, gas and other mineral purposes, on such terms and conditions as in his judgment is for the best interest of all parties concerned, whether or not the term of a lease so made by said Imri T. Smith should or might run beyond the lifetime of said Imri T. Smith.

Second. That after the death of Imri T. Smith, any rents or royalties becoming due under the terms of any gas, oil or other mineral lease, or any renewal or extension thereof, made by Imri T. Smith and continuing in force and effect beyond the lifetime of said Imri T. Smith, shall be paid to Floyd Leo Smith and Leslie C. Smith, the grantees of Imri T. Smith in his deed above referred to, or their lawful heirs or assigns, as remaindermen after the termination of the life interest excepted and reserved to Imri T. Smith in said deed.

Third. After the death of Imri T. Smith, all right, title and interest in and to the oil, gas and other minerals in, on or under the aforesaid tract of land, shall vest in Floyd Leo Smith and Leslie C. Smith, the grantees of Imri T. Smith in his deed hereinabove referred to, or their lawful heirs or assigns as remaindermen, after the termination of the life interest excepted and reserved to Imri T. Smith in said deed, subject, however, to any oil, gas or other mineral lease, or any renewal or extension thereof, made by Imri T. Smith in his lifetime, so long as such lease or any renewal or extension thereof shall continue in force and effect beyond the lifetime of said Imri T. Smith.

Fourth. That the lease dated June 7, 1923, from Imri T. Smith to W. P. Ely, recorded in deed book vol. 306, at page 545, in the office for the recording of deeds of Greene County, Pennsylvania, and herein set forth as Exhibit "B," together with the assignment of said lease, dated June 19, 1923, from said W. P. Ely to Equitable Gas Company, a corporation, herein set forth as Exhibit "C," vests in the Equitable Gas Company, the said assignee, full and complete title to the oil and gas under the tract of land described in the aforesaid lease, together with the right to drill for and take such oil and gas and all the other rights and privileges set forth in said lease or incident thereto, subject to the covenants therein contained, during the term of said lease and any renewal or extension thereof, as fully as though the deed dated Feb. 5, 1920, from Imri T. Smith and Cinderella Smith, his wife, to Floyd Leo Smith and Leslie C. Smith, recorded in deed book vol. 272, at page 320, in the office for the recording of deeds of Greene County, Pennsylvania, had never been executed; and that such full and complete title and all said rights and privileges shall be and remain in the Equitable Gas Company, their successors or assigns, during the full term of the aforesaid lease and any renewal or extension thereof, whether or not the term of the said lease, or any renewal or extension thereof, shall or may run beyond the lifetime of Imri T. Smith.

Fifth. That the costs of this proceeding be paid by Floyd Leo Smith up to and including decree by the Court of Common Pleas of Greene County.

12. Answers were filed by all of the above defendants except Floyd Leo Smith, and they joined in the prayer of the original petition, and these defendants were joined in the proceeding because of any interest they or any of them might have or claim to have which might be affected by a declaration of rights or other legal relations as prayed for in the petition.

13. Floyd Leo Smith filed his separate answer, denying the right of Imri T. Smith to place a lease for oil and gas purposes upon said land, the life of which, by express words, by implication or otherwise, could extend beyond the period of his natural life, he having but a life estate in said oil and gas and claiming, consequently, that the Equitable Gas Company, plaintiff petitioner, operating said land for oil and gas under the said lease from Imri T. Smith, can operate during his lifetime only and not thereafter.

14. The answer of Floyd Leo Smith denies the jurisdiction of the court to enter a declaratory judgment which could affect respondent's title to the oil and gas in any manner whatsoever, and demands that an issue be framed

and tried by a jury as provided by section 9 of the Uniform Declaratory Judgments Act.

15. The defendant, Floyd Leo Smith, at various places in his answer filed, places his construction upon the disputed clause as set forth above and denies the right of Imri T. Smith to place a lease for oil and gas purposes upon said land that would have any effect or convey any title or right to operate the said oil and gas beyond the lifetime of the said Imri T. Smith.

### Discussion.

Without going into an extended discussion of the reasons therefor, it seems to the court that this case is one of the class that is peculiarly within the terms of the Uniform Declaratory Judgments Act. The petition prays for a declaration of rights, status and other legal relations growing out of the clause in the deed, the meaning of which is disputed, and which the plaintiff petitioner claims empowers or enables the grantor in the deed to lease certain lands for oil and gas purposes beyond the term of his natural life for the benefit of all parties concerned under the deed, and to take unto himself, and the remaindermen after his death, the rentals and royalties reserved in the said lease.

It seems to me that there is no difficulty about the court assuming jurisdiction in this case. There are not only the ripening seeds of a controversy in this case, but an actual controversy exists between the parties to this proceeding, all of whom are *sui juris* and before the court. A declaration such as is sought here, defining and declaring the rights, status and other legal relations of all the parties concerned, when properly and finally adjudicated, will terminate the uncertainty and controversy giving rise to this proceeding. There is no action of law to which the petitioner plaintiff can betake itself, no injunction or proceeding in equity or other statutory proceeding affording relief, and all it possibly can do under the facts and circumstances is to obtain a declaratory judgment in this case, abandon the lease or leasehold upon which it has expended its money, or develop the lease at considerable more expense and run the risk of being deprived of its property and estate in the lease or leasehold as it may exist at the date of the death of Imri T. Smith.

There are no issues of fact in this case which need be tried by a jury. The admitted facts bring before the court everything necessary to show the entire dispute, and these undisputed facts, coupled with the interpretation asserted by the petitioner and the contrary interpretation of Floyd Leo Smith, without more, are all that need to be considered by the court. The facts set up in the petition as to what occurred at the execution of the deed and the intention of the grantor therein in inserting the disputed clause in the deed, and the denial by Floyd Leo Smith of the facts surrounding the execution of the deed and as to what was intended by the disputed clause inserted therein, do not enter into the consideration of this controversy. There is no attempt here to reform the deed or to construe it by any of the extraneous facts or circumstances. It is not necessary to consider anything outside of the written deed and agreement of lease submitted in this case. The admitted facts in the case are sufficient to enable the court to adjudicate this case, and the denied facts, which are the only facts that could be submitted to the jury, are immaterial to this issue.

What we are asked to do here is not to impose equitable terms on disputing parties, but to determine fixed legal rights: Ladner *v.* Siegel, 294 Pa. 368, 373.

What estate does Imri T. Smith have in the oil and gas? There is no need to go into an extended discussion of what constitutes a reservation and what an exception. The distinction is sufficiently set forth in a recent decision of

the Supreme Court so far as it need be applied to this case. " 'A reservation is the creation of a right or interest which had no prior existence as such in a thing or part of a thing granted. It is distinguished from an exception in that it is a new right or interest. An exception is always of part of the thing granted, it is of the whole of the part excepted. A reservation may be of a right or interest in the particular part which it affects. These terms are often used in the same sense, the technical distinction being disregarded:' Kister v. Reeser, 98 Pa. 1, 5; Schmidt v. Lieberum, 54 Pa. Superior Ct. 500. The intent of the grantor must be disclosed by the words used: Mandle v. Gharing, 256 Pa. 121; Sheffield Water Co. v. Elk Tanning Co., 225 Pa. 614:" Lauderbach-Zerby Co. v. Lewis, 283 Pa. 250, 254.

The case of Mandle v. Gharing, supra, expresses clearly the rule as to the cessation of a right at the death of grantor in cases of unqualified reservations. Mr. Justice Mestrezat there said: "The real question in the case is whether the clause in question was intended to operate as an exception or a reservation of the oil and gas from the grant made by Gharing to his grantees. Though apt words of reservation be used, says Trunkey, J., in Kister v. Reeser, 98 Pa. 1, 5, they will be construed as an exception if such was the design of the parties. In Lillibridge et al. v. Lackawanna Coal Co., 143 Pa. 293, 308, Mr. Justice Green says that an exception and reservation differ in legal effect, 'but in their creation 'there is no magic in words,' and if the meaning is clear, either expression will operate for the purpose designed.' The technical distinction between an exception and a reservation is frequently disregarded in the ordinary use of the words, and, therefore, whether the language used in any particular case creates an exception or a reservation must be determined from the intention of the parties ascertained from the entire instrument. If a particular clause be construed as an exception from the grant, no words of inheritance are necessary, because title to the excepted part remains in the grantor and never passes to the grantee; but if it be construed as a reservation, words of inheritance are necessary, otherwise the right ceases at the death of the grantor, because the grantor creates a reservation to himself of some new right or thing out of the property which he has granted and which was not in existence at the time of the granting: Whitaker v. Brown, 46 Pa. 197." That case related to an exception and reservation of oil and gas, and it was there decided: "4. Where the owner of a tract of land conveyed the same by a deed, which, inter alia, provided 'excepting and reserving from the above all oil or gas produced from the said undivided one-fourth of the above described tract of land,' the lower court properly held that the words created an exception, that the title to the oil and gas remained in the grantor and at his death vested in his residuary devisee."

The habendum is made "subject to the exceptions and reservations aforesaid," but no other subsequent clauses of the deed explain or qualify the disputed clause (Laidley v. Rowe, 275 Pa. 389, 395), and they need not be considered. They do not affect the exception or reservation in any way or the dispute as to their interpretation.

For the purpose of proper consideration, the distinctive parts of the paragraph in dispute may be readily divided into two clauses, the first of which ends with the word "land" in the middle of the paragraph. There is little room for dispute as to the character of the first clause as indicated. It is an exception and so denominated in the clause itself, which starts off with the language, "there is also excepted from this conveyance," etc. This is followed in the second or last clause with what might more properly be termed a

reservation, beginning with the words, "with the exclusive right in the said Imri T. Smith to lease said land," etc.

It seems to the court unnecessary to elaborate as to the character and effect of the latter clause. It is a reserved power, coupled with an interest, only limited by the judgment of Imri T. Smith as to the terms and conditions that are for the best interest of all parties concerned.

"No formal set of words is requisite to create or reserve a power. It may be created by deed or will, and it is sufficient that the intention be clearly declared. The creation, execution, and destruction of powers, all depend on the substantial intention of the parties; and they are construed equitably and liberally in furtherance of that intention. [Nor is it material whether the donee of the power be authorized to limit and appoint the estate, or whether the language of the settlement goes at once to the practical effect intended and authorizes the donee to sell, lease or exchange. A devise of an estate generally or indefinitely, with a power of disposition over it, carries a fee. But where the estate is given for life only, a devisee takes only an estate for life, though a power of disposition, or to appoint the fee by deed or will, be annexed; unless there should be some manifest general intent of the testator, which would be defeated by adhering to this particular intent]: 4 Kent's Commentaries, 319:" Graeff v. DeTurk, 44 Pa. 527, 531.

The manifest general intent of the grantor donee in this case is to secure first to himself the rentals and royalties that may be obtained from leasing or operating the land during his life and after his death to secure what remains to the parties thereafter entitled to take any reversion or remainder. The exercise by Imri T. Smith of his power to lease the oil and gas was an exercise of his judgment for the best interest of all parties concerned, and the terms and conditions in the lease involved in this case are dictated by the best judgment of the said Imri T. Smith for the best interest of all parties concerned.

"Powers may be granted, whether by deed, will, or otherwise, either expressly or impliedly. Whether a particular power is expressly created in any case is a question of intention and construction; and in like manner it is a question of intention and construction whether a power is to be implied from the provisions of a will, deed or other instrument. No particular form of words is necessary to create a power under a will or deed; any words, however informal, which clearly indicate an intention to give or reserve a power are sufficient for that purpose. The whole intention must be looked at and a power may be given in any part of the instrument, whether before or after conveyance of the estate:" 31 Cyc., 1044 B. A power may be reserved as well as granted: Hagedorn v. Goodin, 24 Dist. R. 204; Egbert v. de Solms, 218 Pa. 207.

A mere naked power is revocable at the will of the donor or grantor, but where a power is coupled with an interest, it is irrevocable: 31 Cyc., 1051; Frederick's Appeal, 52 Pa. 338. A power coupled with an interest means an interest in the subject-matter over or concerning which the power is to be exercised, and it is not sufficient that the interest is in that which is to be produced by the exercise of the power: White's Appeal, 36 Pa. 134, 139; Hartley's Appeal, 53 Pa. 212; 91 Am. Dec. 207; 7 A. L. R. 938, 948; 31 Cyc., 1043.

It is contended by the defendant respondent, Floyd Leo Smith, that a reservation in a deed is to be construed most strongly against the grantor, citing Grubb v. Grubb, 101 Pa. 11, 15; Richardson v. Clements, 89 Pa. 503, and other cases setting forth the same rule; and that a doubtful reservation or excep-

tion will be construed most strongly against the grantor: Klaer v. Ridgway, 86 Pa. 529; Taylor v. Smith, 2 Wharton, 432, 436. It will be noted, however, in Richardson v. Clements (page 505) that this rule is only to be applied where the language is doubtful: "It has no place when the language is sufficiently clear to define the character and extent of the exception or reservation." We do not agree that this rule of construction is to be adhered to in the instant case, but feel that a more liberal construction should be applied and the power reserved in this case by the owner should be liberally construed as a part of his ancient estate and should receive the construction most favorable to the original owner: 31 Cyc., 1057.

It is undoubtedly true that, "unless conferred expressly or by implication, the owner of a life or other limited estate has no power to grant leases binding upon the remainderman." This principle we believe to be correct, but in the present case not only the language itself but the well known conditions obtaining in the oil and gas industry give rise to the unquestionable implication that Imri T. Smith was to have the right or power to lease the land for oil and gas, according to the usual practice. Without this right, which in this case involves the granting of a lease for a term extending beyond the life estate, he would have no opportunity to enjoy the rentals or royalties that might be obtained. Before any royalties could be obtained, the lessee would have to expend a large sum of money in drilling for oil or gas, and no operating company would take the chance of so drilling if the well and the lease could be taken from them on the death of Imri T. Smith, which might occur at any time.

Plainly, the parties had in mind and intended, and we think expressly so stated, that when Smith conveyed the land to his sons he reserved the right to place an oil and gas lease on it, and, if operated, to get the rents and royalties for his own use so long as he should live. If this were not the intention, what was meant by the expression that he was to have the exclusive right to lease the land for oil and gas on such terms and conditions as in his judgment is for the best interest of all parties concerned? No limit whatever was placed upon his judgment and determination as to what kind of a lease should be granted and how long it should continue.

The respondent, Floyd Leo Smith, admits in his answer that Imri T. Smith had a right to make the lease for the oil and gas and admits that petitioner has a right to operate under the lease, but claims that petitioner's right will terminate upon the death of Imri T. Smith. An examination of the reservation of the life estate in the oil and gas, coupled with the exclusive right to lease, shows that the right to lease is a power to lease "said land for oil and other mineral purposes." It is not as respondent claims, a right to lease the oil and gas in which Imri T. Smith reserved a life estate, but it is a right or power to lease the land in which Imri T. Smith did not have a life estate, and, therefore, there is no implication or inference that the term of the lease is to be limited to the term of the life estate. He reserved the power to bind the land already in the possession of Floyd Leo Smith with this lease. The income from the lease, either rentals or royalties, is to go to Imri T. Smith during his life, and after his death the remaindermen will receive the profits.

A contract should be construed in the light of existing facts and circumstances under which the parties entered into it. It should be so interpreted as to effect the objects in respect to which the parties proposed to contract: Richardson v. Clements, 89 Pa. 503, 505. Every agreement is to be interpreted and construed with reference to the circumstances under which the parties contract and the well known customs prevailing: Callen v. Hilty,

14 Pa. 286, 288; Berridge v. Glassey, 112 Pa. 442, 455; Reading v. Traction Co., 202 Pa. 571, 575; and the objects manifestly to be accomplished: Kendall v. Klapperthal Co., 202 Pa. 596, 610. It seems to have been well known to the grantor and grantees in the deed that an oil and gas lease for the term of the natural life of Imri T. Smith would be of no value to him or any one else. No producer would develop a lease of that uncertain duration. This farm is in a territory where oil and gas and leasing terms have been household words since 1888, and the language of the deed indicates that the parties knew what the law presumes they should know, that a life tenant without power to lease oil and gas could not grant or lease the necessary easements or right of entry on land in order to drill and develop a lease.

It is contended by Floyd Leo Smith that the court has no jurisdiction because the Equitable Gas Company is not a party to the deed and has no interest in the title or estate granted by the deed; that the lease and assignment thereof do not create an estate in the land, but a mere license to explore during the life of Imri T. Smith; that the lease further violates the reservation in the deed by granting rights of way to lay pipes, use water and other privileges which the respondent claims would be injurious to the land and in the nature of waste. It is further claimed that the construction sought by the petitioner plaintiff seeks to reform the deed, and that the petitioner is a mere volunteer and has no right to obtain a declaration of rights under the deed. Most of these matters have been covered generally by the discussion, and we feel that, with the exception of the following matter, they need not be further considered.

The agreement between Imri T. Smith and the Equitable Gas Company is a lease for oil and gas purposes and not a mere license to explore. In Barnsdall v. Bradford Gas Co., 225 Pa. 338, it was held: "Where an instrument in writing does 'grant, demise, lease and let unto the said party of the second part . . . all that certain tract of land . . . containing 100 acres, . . . for the sole and only purpose of mining and operating for oil, gas and other minerals and of laying pipe lines and of building tanks, stations and structures thereon to take care of the said products,' the paper creates a corporeal interest in the lessee in the demised premises and is not merely a license to enter and operate for oil and gas; and the lessee, although he never entered into possession of the premises, may maintain an action to recover possession from a third party not claiming under the lessor.

"When, under such a grant, oil has been discovered, it is the grantee's right to produce it and sever it from the soil; so much as is thus severed belongs to the parties entitled under the terms of the grant, not as any part of the real estate, however, but as a chattel, and only so much as is produced and severed passes under the grant; as to all not produced, there is no change of property:" Kelly v. Keys, 213 Pa. 295, 298. In some more recent cases it has been held that a grant of the oil and gas under the land, with the right to drill and operate for the same, is a sale of the oil in place, but whether we construe the lease in the instant case as a sale of the oil in place or the grant of an exclusive right to mine for and produce oil, the best authorities seem to indicate that the agreement under consideration is a lease for oil and gas purposes. "Mineral contracts partaking of the nature of sale or demise will be treated as leases:" Spence v. Lucas, 138 La. 763, 70 So. Repr. 796; Cooke v. Gulf Refining Co., 135 La. 609, 65 So. Repr. 758. "A conveyance containing both the words of a deed or grant and of a lease covering coal, salt, oil and other mineral rights on land known to have produced oil was construed with reference to the known condition at the time of its deliv-

ery and by the construction of the parties to be a lease and not a conveyance: McMillin *v.* Titus, 222 Pa. 500, 72 Atl. Repr. 240:" Morrison, etc., Oil and Gas Rights, 56. In the last recited case, a Greene County case, the grant was of the sole, separate and exclusive right of prospecting, examining and searching for coal, minerals, oil, etc., and the right and privilege to dig, excavate, bore and sink pits and wells for the same, and it was held in that case that the paper in question was a lease of the oil, gas, salt, etc., instead of a conveyance of the coal, which was the principal subject of the controversy in that case.

In accordance with the foregoing opinion, the court answers the foregoing specific requests for declaratory judgment, as set forth in the prayer of the petition, in the affirmative, and judgment is accordingly entered, at the costs of the defendant, Floyd Leo Smith, as follows:

And now, July 15, 1929, this case came on to be heard upon a petition and answers, and after argument of counsel and on due consideration thereof, it is ordered, adjudged and decreed, accordingly, that:

First, that the deed dated Feb. 5, 1920, from Imri T. Smith and wife to Floyd Leo Smith and Leslie C. Smith, recorded in deed book vol. 272, at page 320, in the office for the recording of deeds in Greene County, Pennsylvania, is and shall be construed as excepting and reserving to said Imri T. Smith, during the life of said Irmi T. Smith, all the oil and gas and other minerals, the rentals and royalties that may be obtained from the leasing or operating of said land; and excepting and reserving unto said Imri T. Smith the right, exclusive in him during his lifetime, to lease said land for oil, gas and other mineral purposes on such terms and conditions as in his judgment is for the best interest of all parties concerned, whether or not the term of a lease so made by said Imri T. Smith should or might run beyond the lifetime of said Imri T. Smith.

Second. That after the death of Imri T. Smith any rents or royalties becoming due under the terms of any gas, oil or other mineral lease, or any renewal or extension thereof, made by Imri T. Smith and continuing in force and effect beyond the lifetime of said Imri T. Smith shall be paid to Floyd Leo Smith and Leslie C. Smith, the grantees of Imri T. Smith in said deed, or their lawful heirs or assigns as remaindermen after the termination of the life interest excepted and reserved to Imri T. Smith in said deed.

Third. All right, title and interest in and to the oil, gas and other minerals in, on or under the aforesaid tract of land shall vest in Floyd Leo Smith and Leslie C. Smith, the grantees of Imri T. Smith in his deed hereinbefore referred to, or their lawful heirs or assigns as remaindermen, after the termination of the life interest excepted and reserved to Imri T. Smith in said deed, subject, however, to any oil, gas or other mineral lease, or any renewal or extension thereof, made by Imri T. Smith in his lifetime, so long as such lease, or any renewal or extension thereof, shall continue in force and effect beyond the lifetime of said Imri T. Smith.

Fourth. That the lease dated June 7, 1923, from Imri T. Smith to W. P. Ely, recorded in deed book vol. 306, at page 545, in the office for the recording of deeds of Greene County, Pennsylvania, together with the assignment of said lease, dated June 19, 1923, from said W. P. Ely to Equitable Gas Company, vests in the Equitable Gas Company, the said assignee, title to the oil and gas under the tract of land described in the aforesaid lease, together with the right to drill for and take such oil and gas, and all the other rights and privileges set forth in said lease or incident thereto, subject to the covenants therein contained, during the term of said lease, and any renewal or extension

thereof, with the same force and effect as though the deed dated Feb. 5, 1920, from Imri T. Smith and wife to Floyd Leo Smith and Leslie C. Smith, had never been made; and that said oil and gas and all said rights and privileges granted and devised therewith shall be and remain in the Equitable Gas Company, their successors or assigns, as provided by the terms and conditions of said agreement of lease, or extension thereof, even though the term of said lease or leasehold estate thereunder may continue and extend beyond the lifetime of Imri T. Smith.

Judgment as above declared is accordingly so entered.

From S. M. Williamson, Waynesburg, Pa.